UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 22-cr--319-01  (RCL) |
| | ) | |
| Kimberly Wargo, *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on June 15, 2023 at 12:15 p.m. EST when she appears by videoteleconference (VTC) before the Court for her sentencing hearing.

1.  The defendant was charged, along with her son Colton Wargo, by complaint in 22-mj-0093 (RMM) on May 3, 2022. She made her first appearance at a Rule 5 hearing held on May 4, 2022, in the U.S. District Court for the Northern District of Ohio.[1]  Se was charged with four misdemeanor offenses resulting from her presence in the Capitol during the protests and riot of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(G) ("Demonstrating").  She was released on her own recognizance on conditions that were nearly identical to those imposed when, on July 21, 2022, she appeared before this Court (Mag. Judge G. Michael Harvey)  (ECF Doc. 19)  On July 26, 2022, the defendant appeared again for a bond

---

[1] In its case 1:22-mj-4141.

review hearing, when the Court modified the conditions of release. On Sept. 23, 2023, the

government filed a criminal Information reiterating the charges that appeared in the Complaint.

(ECF Doc. 20)   She was arraigned by this Court on the criminal Information in the instant case

on November 10, 2022, at which time she entered a plea of not guilty to all charges.  Since her

release, Ms. Wargo has been a model defendant with unblemished compliance with the

conditions that were first  imposed in Ohio in May 2022, then here two months later..

2. After negotiations with the government, in which the parties shared information, the

defendant entered a plea of guilty before this Court to Count Four on a theory of, and admission,

to Parading, in violation of 40 U.S. §5104(e)(2)(G).   She did so at the earliest time possible; the

only impediment was for the government and defendant to agree on both a theory and on

wording that both sides could accept.  The remaining charges will be dismissed by the

government at sentencing, per the terms of the Plea Agreement.  Parading, along with its fellows

Demonstrating and Picketing, is a petty offense which carries a maximum sentence up to six (6)

months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and

a $10 special assessment.  As a petty offense, the U.S. Sentencing Guidelines do not apply.

(Presentence Investigation Report ("PSI"), ¶27)  The defendant agreed to pay $500.00 in

restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were

necessary after the riot.

4.  Defendant and her counsel have reviewed the Draft and Final PSIs (ECF Doc. 57) and

lodged two objections which were resolved satisfactorily by U.S. Probation Office Kiechelle

Dunlop, who prepared the report..

5.  The defendant came to Washington with her son Colton for the January 6 rally for then-President Trump on the Ellipse.  They wished to see the president speak before he would shortly leave office. They attended the rally, heard the speech, then walked alongside many others to the U.S. Capitol. They entered the Capitol and spent nearly a half hour inside.  As they they walked unhindered through different parts of the building, they had a false sense that this was allowed.  They were peaceful and respectful.  One one occasion, her son stopped a man trying to kick in a door; on another,  her son picked up a rope-line stand that had toppled.  Once officers made clear to them that they could be arrested if they didn't leave – in other words, at the very least that they were trespassing –  they left the Capitol, not to return. .

6.  While in the Capitol or on its grounds, neither the defendant nor her son committed acts of violence against persons or property.  She did not take photos; encourage misbehavior; take part in chants or vituperate Congressional or administration officials;  post inflammatory messages on social media before or after; or show disrespect by stalling or  refusing the officers' orders to leave.

7.  The defendant has no criminal record of arrests or convictions, juvenile or adult. (PSI, page 6, ¶¶23-28)  The current crime is a Class B petty offense under the federal code, not subject to the federal sentencing guidelines; if it were, the defendant's criminal history category would be a "I," (one), the lowest level.  Moreover, the offense of Parading is not a crime of moral turpitude, nor does it represent misbehavior as does disorderly conduct.  Demonstrating, parading and picketing are not illegal *per se*, and in fact are protected by the 1st Amendment, but they may be limited, as they were here, as to time or place.  The Capitol was closed to the public that day for a compelling reason: so the Congress could receive the votes of the electoral college

and certify the victor of the recent presidential election.[2]  The defendant understands that she

interfered with that process, and added to the difficulties of  the officers who already had their

hands full, charged with keeping order in what was first disorder, then chaos.  She regrets her

actions and takes responsibility for them.

8. On her own, the defendant has born and raised three children, all now grown.  She has

been continuously employed since 1996, and has worked for the past seven months at the bar and

restaurant of a German cultural center near her home.  Her supervisor, Mark Zitney, has prepared

a letter of reference which is attached as an exhibit. He prizes her as a trusted, capable, friendly

employee whose job will be secure no matter the sentence the Court decides to impose in this

case.  His letter echoes what Jeremy Martin, defendant's friend who has also employed the

defendant, told the PSI writer Ms. Dunlop, that she is "trustworthy…respected,  and loved by

everyone." (PSI, page 8, §37)

9.  One incident, though, to which this memo referred obliquely in §1 on page 2, is most

telling and revealing about the defendant.  Pretrial Services in Ohio obtained information about

the defendant for her Rule 5 appearance when it searched her criminal history.  It recorded a

series of driving infractions, including driving under the influence of alcohol, when she lived in

Pennsylvania, during a period from 2008 to 2022.  The court in Ohio imposed substance abuse

treatment and other testing as conditions of release. (Doc. 7, page 19, ¶7 "Rule 5 documents")

10.  Counsel spoke by phone with the defendant to introduce himself before her initial

appearance in this Court before Judge Harvey.  The defendant expressed puzzlement and

---

[2] One who is admitted lawfully by entering through the Visitor's Entrance on the East Side of the Capitol on days the Capitol is open to the public are not allowed to demonstrate, parade or picket. The *place* of the conduct makes the activity illegal.

wondered to counsel that the court in Ohio would set such conditions, because the defendant

maintained that she abstains from drinking; she could not understand what basis there could be

for such conditions.  But she had never been arrested before, her court appearance in Ohio was

probably mystifying and even a blur.[3]

11.  It was not apparent then to counsel why the conditions were imposed but they bore

further investigation.  The Rule 5 documents did not include the PSA report from Ohio.

Counsel's recollection is that he asked the PSA representative to note the basis for the requested

substance abuse conditions.  It was then the defendant heard that she had arrests and convictions

for traffic offenses, including drunk driving.   Her response was, paraphrasing,  "Those aren't

mine. That's not my criminal record.  I've never been convicted of a crime, much less arrested,

in my life."  Counsel told the Court the defendant denied having a criminal record.

 11. Though the defendant objected to the conditions, Judge Harvey nonetheless imposed

them, with the proviso that PSA would have to do a further criminal history check and supply

complete, correct information at a bond review hearing five days later.  At that hearing on June

26, 2022, the Court learned that PSA had obtained information about another Kimberly, with a

different surname, whose record was mistaken for the defendant's.  Judge Harvey then removed

the conditions he had imposed five days earlier.

12. This was the first, though not the only, time that counsel has been exposed to the

defendant's vigorous expression of righteous indignation.  She prides herself on being a

law-abiding, civic-minded, responsible citizen, and she was both hurt and personally offended

that the court system, with its formidable resources, could confuse her with another who had

---

[3] Counsel takes dramatic license here, for reasons that will become obvious, though hewing to what he has observed about the defendant.

trifled with the law.  She was greatly relieved that the error was found and corrected, before it

could have other unfavorable consequences for her.

10. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in

Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in

determining the particular sentence to be imposed, shall consider - (1) the nature and

circumstances of the offense and the history and characteristics of the defendant; (2) the need for

the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal

conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the

defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner….

11. Counsel knows that this Court starts with what could be called an inclination to

impose a period of incarceration in January 6 cases and a disinclination to impose straight

probation.   Counsel's view, which may be personal to him, is that there is value to what might be

called a "judicial spanking," a short, smarting term of incarceration.

12.  Nonetheless, in this case, the defendant submits that her record of responsible

conduct throughout her life, a life that has not been without periods of great difficulty[4], when

measured alongside her conduct on January 6, supports a term of probation.  Counsel would not

use here (nor elsewhere) that hoary phrase, "the defendant has been punished enough."  But it is

true that being charged with an offense for the first time in her life has caused the defendant to

---

[4] PSI, page 7, ¶¶30-32.

suffer.  She reported to USPO Dunlop that her anxiety levels, apparently never very low, have

increased since she was charged in this case, and the breathing exercises she has used in the past

to reduce anxiety she continues to use. (PSI, page 9, ¶41)

13.  The defendant submits that if the Court concludes that straight probation (with or

without a component of community service) is not warranted, then a period of home detention, in

lieu of incarceration in a punitive facility, would yet satisfy the "need for the sentence…to reflect

the seriousness of the offense, promote respect for the law, and provide just punishment for the

offense."  Such a term would at the same time provide deterrence specific to the defendant,

operating as a disincentive to further criminal behavior.

14.  The defendant further represents that, if probation is imposed, that the term be no

longer than six months.  The defendant does not need the services of the U.S. Probation Office;

their resources are better applied elsewhere, to those who can really benefit from them.  The

defendant works, does not use drugs, obeys the law, and, till this case, has stayed out of trouble.

The cautionary effect this case has had will stay with her.

15. For all the reasons noted above, the defendant respectfully requests a sentence of

probation of six (6) months, with no objection to hours ofcommunity service.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Anita Eve, Esq., USAO-EDPA, this 12th day of June, 2023.

/s/

_____

*Nathan I. Silver, II*